# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| KENT RAY ALLEN, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-00738-SDJ-CAN |
| v. | § § | |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying his claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## RELEVANT PROCEDURAL HISTORY

On July 3, 2019, Plaintiff filed his application for disability and disability income benefits ("DIB") under Title II of the Social Security Act [TR 59-60, 69, 71]. Plaintiff alleged disability due to bulging disc in the lower back, sciatica radiating into both legs, numbness and pain in both feet, with severe pain in the left leg [TR 170]. At the time of hearing, Plaintiff amended his application to assert an alleged onset date of April 3, 2018 [TR 36]. Plaintiff was born on March 5, 1964, making his age classification at the date of alleged onset as that of a "person closely approaching advanced age." *See* 20 C.F.R. §§ 404.1653(d). Plaintiff has a high school education [TR 38], and his last full-time employment was as a maintenance supervisor [TR 78].

On March 17, 2020, Plaintiff's application was initially denied [TR 68], and again on reconsideration on May 13, 2020 [TR 78]. A hearing was held on January 26, 2021, at which

Plaintiff and a vocational expert ("VE") testified [TR 31]. Plaintiff was represented by counsel at Hearing [TR 31]. On February 25, 2021, Plaintiff's application was denied [TR 12-26]. More specifically, the ALJ made the following sequential evaluation [TR 12-26].[1] The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2019, and that Plaintiff had not engaged in substantial gainful activity from the amended alleged onset date, April 3, 2018, through the date last insured, December 31, 2019 [TR 18]. The ALJ found Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine with radiculopathy and obesity with a body mass index (BMI) of 34.9" [TR 18]. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926) [TR 20]. At step four, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, and crawl.

[TR 21]. Continuing the step four analysis, the ALJ found Plaintiff was capable of performing his past relevant work as a maintenance supervisor [TR 25]. Thus, the ALJ found Plaintiff was not

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing her past work. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

under a disability as defined in the Social Security Act, from April 3, 2018, through December 31, 2019 (20 C.F.R. § 404.1520(g)) [TR 26].

On April 6, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 145-150]. The Appeals Council denied review on August 2, 2021 [TR 1-3]. On September 24, 2021, Plaintiff filed the instant suit [Dkt. 1]. On March 1, 2022, the Administrative Record was received from the Social Security Administration [Dkt. 12]. Plaintiff filed his Brief on March 31, 2022 [Dkt. 14]. The Commissioner filed its Brief on May 29, 2022 [Dkt. 15]. On June 3, 2022, Plaintiff filed his Reply [Dkt. 16].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff argues two claims of error on appeal: (1) the ALJ erred in failing to include the use of an assistive device for ambulation in Plaintiff's residual functional capacity ("RFC"); and (2) the ALJ failed to properly consider the medical opinion evidence in her subjective symptom analysis [Dkt. 14 at 6-7].

### *What is the RFC?*

The RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments.[2] 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). Stated more simply, the RFC is the most a claimant can do despite his or her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The Court must determine whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

---

[2] When considering a claimant's RFC, the Commissioner assesses an applicant's physical, mental, and sensory abilities, evaluates how those abilities apply to that applicant's work-related functioning, and finally considers whether that applicant can sustain work-related activities in a work setting on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b)-(d); S.S.R. 96-8p, 1996 WL 374184 at *3-4.

*Assistive Device*

In formulating Plaintiff's RFC, Plaintiff argues it is error for the ALJ, on one hand, to find consultative examiner, Dr. Nathanial Milburn's, opinions persuasive, and on the other, to reject Dr. Milburn's opinion that Plaintiff requires an assistive device for short and long distances and over uneven terrain [Dkt. 14 at 6-7]. Plaintiff contends the ALJ erred by failing to incorporate his use of an assistive device into the RFC. The Commissioner submits, in response, that the ALJ properly weighed Dr. Milburn's opinion against other medical evidence and found the use of a cane inconsistent with the medical record as a whole [Dkt. 15 at 6].

*Dr. Nathaniel Milburn*

On February 29, 2020, Nathaniel Milburn, M.D., performed a consultative "internal medicine exam" of Plaintiff at the request of the Commissioner [TR 413-422]. Relevant to the issues on appeal, the physical examination revealed Plaintiff to be in no acute distress [TR 416]. There was no evidence of clubbing, cyanosis or edema, and no amputations [TR 417]. Plaintiff's gait was asymmetric, slow, unsteady, antalgic and limping; Plaintiff came with an assistive device (cane) but could walk around the exam room without it. Hand eye coordination was good; finger to nose and heel to shin were normal; and Romberg sign was negative [TR 417]. Plaintiff could squat and rise with difficulty but was unable to rise from a sitting position without assistance needing his cane. He had difficulty getting up and down from the exam table and difficulty walking on heels and difficulty walking on his toes [TR 418]. Tandem walking was abnormal due to needing his cane and Plaintiff was unable to hop [TR 418]. Dr. Milburn's impressions included that Plaintiff suffered from "back pain with associated sciatica from nerve root impingement [TR 418]. Following his examination, Dr. Milburn found:

> There are no limitations with sitting or standing. There are limitations with walking due to low back pain. The claimant needs an assistive device (cane due to instability) with regards to short and long distances and uneven terrain. There are limitations with lifting due to low back pain. There are limitations with carrying weight due to low back pain. There are limitations on bending and stooping due to low back pain. There are limitations on crouching and squatting due to low back pain. There are no limitations with reaching, grasping, handling, fingering and feeling. There are no relevant visual, communicative or workplace environmental limitations.

[TR 419]. The ALJ's Decision thoroughly outlines this consultative examination [TR 19, 23-24].

*State Agency Medical Consultants*

After Dr. Milburn's consultative examination, Plaintiff's medical records were reviewed by two state agency medical consultants. On March 17, 2020, Dr. Cynthia Lindaros completed an assessment of Plaintiff's medical records and residual functional capacity [TR 60-68]. Dr. Lindaros was provided and reviewed Dr. Milburn's opinions, her assessment specifically denotes the following regarding the consultative exam: "unable to rise from sitting position w/o assistance needing his cane. Difficulty getting up & down from exam table. Difficulty walking on heels & difficulty walking on toes. Tandem walking abnormal D/T needing his cane. Unable to hop. Unk[nown] who prescribed cane" [TR 64]. Following review of Dr. Milburn's evaluation and the remaining medical records, Dr. Lindaros found Plaintiff would have exertional limitations; specifically, Plaintiff would be limited to occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking about 6 hours in an 8 hour workday; sitting about 6 hours in an 8 hour workday; unlimited pushing and/or pulling [TR 64]. Dr. Lindaros found Plaintiff would have postural limitations; specifically, Plaintiff would be limited to climbing ramps/stairs occasionally, climbing ladders/ropes/scaffolds never, balancing occasionally, stooping occasionally, kneeling occasionally, crouching occasionally, crawling occasionally [TR 65-66]. Dr. Lindaros did not find Plaintiff required the use of an assistive device

and did find Plaintiff could return to his past work as it was actually performed [TR 66-67]. Dr. James Wright performed a further review on May 13, 2020, reaching identical conclusions to those found by Dr. Lindaros [TR 70-79]. The ALJ's Decision sets out these findings [TR 24].

### *Plaintiff's Testimony at Hearing*

At Hearing Plaintiff testified regarding his use of an assistive device [TR 31-58]. Plaintiff testified that he presented with a cane to Dr. Milburn's offices in February 2020 for his consultative examination [TR 46]. He testified at time of Hearing, in January 2021, he had been using a cane, at all times, for approximately a year or so [TR 47]. Plaintiff testified that no physician had prescribed the use of a cane; he began using it to alleviate pressure on his leg [TR 47]. Plaintiff testified without his cane he could walk maybe ten yards [TR 49]. Plaintiff testified that "back to 2018" he was doing the shopping for house, and that he would "go there [to the store] and walk" to complete the shopping, and that he could do a couple of aisles before needing to sit [TR 49]. The ALJ's Decision accurately outlines Plaintiff's testimony at Hearing, and recounts Plaintiff "can walk short distances of 10 yards and uses cane all the time or a walker on occasional, but they were not prescribed" and Plaintiff "admitted that he stared using the cane on his own. He reported that he could walk maybe 10 yards, stand 10 minutes, sit 10-15 minutes then had leg and back pain, and lift 10 pounds" [TR 21-22].

### *ALJ's Decision*

The ALJ's Decision addresses Plaintiff's use of an assistive device. Indeed, while Plaintiff's briefing focuses on Dr. Milburn's opinion, the ALJ addressed the totality of the record, finding Plaintiff's medical records, "lack[ed] notations about the claimant using an assistive device" [TR 25]. The ALJ's Decision outlines at length why the use of assistive device was not included in the RFC:

> He does not require an assistive device, as he usually has had normal coordination and an antalgic gait with a lack of notations about the claimant using an assistive device (see e.g., Exhibits 3F/4-5; 5F/5). Further, to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (SSR 96-9p). In this case, medical evidence of record does not substantiate the claimant's requirement for the use of a handheld assistive device…
>
> …
>
> In assessing the claimant's residual functional capacity, the undersigned found persuasive the prior administrative findings of State agency consultants that the claimant could perform light work with additional postural limitations of occasionally climbing ramps/stairs but never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl (Exhibits 2A, 4A). It is supported by these consultants' explanation of the evidence they reviewed and that evidence supports the findings. The cited opinions are persuasive because the medical evidence of record through Exhibit 6F supports a light residual functional capacity with additional postural limitations (see e.g., Exhibits 2F/5, 39; 3F/4-5; 4F/25, 27, 30, 31; 5F/4-7).
>
> Finally, the undersigned found persuasive the opinion of the consultative examiner Milburn that the claimant has no limitations with sitting or standing; has limitations with walking due to low back pain, needs a cane due to instability with short/long distances and uneven terrain; has limitations with lifting, carrying, bending, stooping, crouching, squatting, but no limitations with reaching, grasping, handling, fingering and feeling (Exhibit 5F/7). The cited opinions are persuasive that limitations exist, although there were no specific functional limitations provided. However, the cane use is not supported by his own examination as he noted the claimant could walk around the room without it (Exhibit 5F/5), and examinations have only noted an antalgic gait with a lack of notations about the claimant using an assistive device (see e.g., Exhibits 3F/4-5;5F/5).

[TR 24-25].[3]

---

[3] Notably, the Social Security Administration's updated rule for assessing medical opinion evidence governs Plaintiff's claim, as it was filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c. The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). A medical opinion is a statement about what functional limits a claimant may have from an impairment. 20 C.F.R. § 404.1513(a)(2). Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source

Notwithstanding the ALJ's thorough explanation, Plaintiff now argues that his use of an assistive device should have been included in the RFC. The only medical documentation stating that Plaintiff required the use of cane is Dr. Milburn's opinion. Plaintiff cites to no other medical records other than Dr. Milburn's where an assistive device was observed being used. Moreover, none of the records reflect that Plaintiff was prescribed an assistive device. Indeed, Plaintiff himself admitted at Hearing that he was *not* prescribed an assistive device [TR 47]. Numerous other records, not referenced in Plaintiff's briefing, indicate that Plaintiff (during the relevant time) had antalgic gait but made no notation that an assistive device was necessary and/or in use [TR 25]. Additionally, the findings of the SAMCs, which were made following review of Dr. Milburn's findings, did not include a need for an assistive device. *See Teresa B. v. Kijakazi*, No. 4:20-cv-2562, 2022 WL 902640, at *6 (S.D. Tex. Mar. 28, 2022) ("[T]he Court finds that the SAMCs' opinions provide substantial evidence to support the ALJ's RFC determination."). The ALJ found the SAMCs opinions to be persuasive and included their recommended exertional and postural limitations in the RFC. *See also Gaunder v. Comm'r of Soc. Sec.*, No. 4:19-cv-1002, 2020 WL 7091263, at *3 (N.D. Tex. Sept. 28, 2020) (finding the ALJ properly weighed the evidence under the new regulations in finding the SAMCs opinion more persuasive than the treating physical or consultative examiner), *report and recommendation adopted*, No. 4:19-cv-1002, 2020 WL 6128040 (N.D. Tex. Oct. 19, 2020).

While Plaintiff is correct that the ALJ may not "substitute her own medical judgment" [Dkt. 14 at 7], "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or

---

has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. See 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a).

REPORT AND RECOMMENDATION − Page 9

standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Reese v. Comm'r*, 4:21-cv-128, 2022 WL 2752797, at *4 (N.D. Miss. July 14, 2022). ALJ's are never required to incorporate limitations in the RFC that they did not find to be supported in the record. *See Ewing v. Colvin,* No. 4:13-cv-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014); *Renovato v. Saul*, No. H-20-643, 2021 WL 966098, at *6 (S.D. Tex. Mar. 15, 2021) (affirming an ALJ's decision that rejected a consultative examiner's opinion who determined plaintiff could never finger, feel, push, or pull, despite a fairly normal physical examination, and which was controverted by other record evidence). Rather, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Pulley v. Comm'r*, No. 4:21-cv-01159, 2022 WL 1694436 (N.D. Tex. May 13, 2022), *report and recommendation adopted*, No. 4:21-cv-01159, 2022 WL 1689445 (N.D. Tex. May 26, 2022). Here, Plaintiff fails to meet his burden to show that he required an assistive device to ambulate, and substantial evidence exists in the record to support the ALJ's refusal to include the use of a cane in the RFC. *See Bivens v. Saul*, No. 3:20-cv-1904, 2022 WL 869687, at *11 (N.D. Tex. Mar. 7, 2022), (finding plaintiff failed to meet her burden to show that she required a cane to ambulate where the records were inconsistent as to whether she used a cane), *report and recommendation adopted*, No. 3:20-cv-1904, 2022 WL 865903 (N.D. Tex. Mar. 22, 2022); *see also Stewart v. Colvin*, No. 1:12-CV-039-BL, 2013 WL 1979738 at *5 (N.D. Tex. May 14, 2013) (finding no error when the ALJ failed to incorporate the use of a cane in a claimant's RFC).

Again, the ALJ expressly delineated why she found the use of a cane unsupported. *Johnson v. Kijakazi*, No. 4:21-cv-2192, 2022 WL 2193412, at *3 (S.D. Tex. June 17, 2022) ("The Commissioner has resolved the conflict. It is not my role to reweigh or second-guess that administrative decision."). The ALJ's decision shows careful consideration of the medical records and testimony, and the record contains ample evidence which supports the RFC found by the ALJ. *See Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner); *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record). The Court rejects Plaintiff's first point of error.

***Subjective Symptom Analysis***

Plaintiff's next point of error focuses on Plaintiff's subjective complaints of pain. While Plaintiff's opening briefing is scant, it is clear Plaintiff argues that the ALJ ignored medical opinion evidence and substituted her own medical judgment to determine Plaintiff's level of pain was inconsistent with the objective findings [Dkt. 14 at 7]. In response, the Commissioner argues that the ALJ properly determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence [Dkt. 15 at 7].

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3P,

2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[4]  First, the ALJ must determine "whether there is an impairment that reasonably produce[s] the symptoms of which the claimant complains." *Guillory v. Saul*, No. 1:19-cv-632, 2021 WL 1600283, at *9 (E.D. Tex. Apr. 23, 2021).  "If the [ALJ] finds no impairment, the plaintiff is not disabled."  *Id*.  If the ALJ identifies an impairment, the ALJ then considers the plaintiff's statements regarding his or her symptoms and the "remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the [plaintiff's] ability to do basic work."  *Id*.  A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record.  *Gonzales v. Kijakazi*, SA-20-cv-00498, 2021 WL 3783242, at *6 (W.D. Tex. Aug. 25, 2021) ("Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony.").

Here, the ALJ's Decision included a thorough summary of the symptoms Plaintiff listed in his function reports and described at Hearing.  The ALJ specifically discussed Plaintiff's alleged pain, finding the objective medical findings and history reflect little in the way of the extreme symptoms Plaintiff complains of:

> After careful consideration of the record as a whole, the undersigned finds that, before the date last insured, the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms have been determined to diminish the capacity for basic work activities only to the extent to which they could reasonably be accepted as consistent with the objective medical and other evidence and the above residual functional capacity, through the date last insured. While the undersigned does not

---

[4] Effective March 2017, the Social Security Administration issued Social Security Ruling 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record.  *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017).  While SSR 16-3p explicitly supersedes SSR 96-7P, "it is evident that the change brought about by SSR 16-3p was mostly semantic."  *Id.* at *7 (collecting cases).

> doubt the claimant experienced some difficulty, his allegations concerning his impairments and the impact on his ability to work are not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's description of his activities of daily living for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they could reasonably be accepted as consistent with the objective medical and other evidence through the date last insured. In essence, the evidence generally does not support the alleged loss of functioning through the date last insured.
>
> …
>
> Although the claimant has alleged experiencing debilitating difficulty, the medical evidence does not support the claimant's allegations of impairment to the extent alleged before the date last insured. Turning to the medical evidence, the objective findings in this case fail to provide strong support for the full extent of the claimant's allegations of disabling symptoms and limitations. There is a lack of imaging studies or diagnostic studies to suggest greater limitations. In particular, a physical examination done in May 2017 noted that the claimant was alert and oriented, in no acute distress, had no edema, no cognitive impairments, with a normal musculoskeletal exam with no paraspinal tenderness (Exhibit 4F/31).
>
> Meanwhile, the claimant's 2017 follow up visits for diabetes mellitus showed he was in no acute distress, examinations were within normal limits (Exhibit 4F/25, 27, 30), and no lumbar diagnosis noted until May of 2018 (Exhibit 4F/25), which is consistent with an April 2018 MRI that demonstrated lumbar degenerative disc disease and spondylotic changes (Exhibit 1F/7-8). Notably, he participated in chiropractic care in February 2018, which noted muscle spasms, good prognosis, and has a diagnosis but no confirmation by testing or imaging until the claimant was sent out for an MRI (Exhibit 2F/5, 39), which was performed on April 3, 2018. Later that month, on April 13, 2018, the claimant presented to Dr. Rose who found that the claimant had a positive straight leg raise test and full range of motion in the lumbar spine, paraspinal muscle strength within normal limits in the lumbar region, 5/5 muscle strength, sensation intact, but antalgic gait and left hip with pain. Dr. Rose diagnosed him with low back pain, degenerative disc disease, and lumbar radiculopathy, continued the claimant's medication, and planned for lumbar laminectomy, decompression (Exhibit 3F/4-5). The absence of significant musculoskeletal or neurological findings is not suggestive of the claimant being substantially limited.
>
> Indeed, an impairment that occurred after the date last insured, or even an increase in severity of an existing impairment after that date, is not grounds for the granting of disability insurance benefits. Notably, at a consultative examination done on February 29, 2020, consultative examiner Milburn noted that the claimant was in no acute distress (Exhibit 5F/4), alert, had good eye contact, fluent speech, appropriate mood, memory normal, good concentration, oriented times four, with

>an asymmetric, slow, unsteady, antalgic, and limping gait. Although he came with an assistive device (cane), Dr. Milburn noted that the claimant could walk around the room without it (Exhibit 5F/5). In addition, Dr. Milburn noted that the claimant had muscle spasms with 3/5 muscle strength on the left lower extremity and 4/5 on the right lower extremity, with limited range of motion of the back. He could squat and rise without difficulty but unable to rise from a seated position without assistance, and needed his cane. He had difficulty getting on and off the table, had difficulty walking on his heels and toes, abnormal tandem walking due to needing his cane, and he could not hop. It is unknown who prescribed the cane. A lumbar spine x-ray revealed degenerative joint disease. The consultative examiner's impression of the claimant include sciatica from nerve root impingement, seems to be functional limiting; hypertension; and diabetes mellitus (Exhibit 5F/5-7). Notably, after the date last insured, during his follow up visits in 2020 for diabetes and low back pain, the claimant wanted Lyrica, and the examinations revealed he was in no acute distress, alert and oriented, had no edema, and his examinations were essentially within normal limits (see e.g., Exhibit 4F/6-7, 11, 14, 17, 19, 22, 25, 28; 6F/3, 5).
>
>Although the claimant complained of severe pain, it is the conclusion of the Administrative Law Judge that the pain experienced by the claimant was not severe enough to preclude all types of work. The issue is not the existence of pain, but rather the degree of incapacity incurred because of it. While the claimant complained of pain, it does not seem reasonable to conclude from the findings in evidence that such could be the basis for the degree of pain alleged. In addition, despite the claimant's allegations of significant pain, he was generally assessed to be in no distress. (e.g., Exhibits 4F/25, 27, 30, 31; 5F/4). This is not consistent with his allegations, as one would expect consistent outward signs of pain if he were experiencing the level of pain alleged. For these reasons, but also considering his degenerative disc disease of the lumbar spine with radiculopathy and obesity and the effect they can have on musculoskeletal functioning, the claimant is limited to, but can perform work at the light exertional level, except occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, crawl.

[TR 23-24]. Buttressing the ALJ's conclusion regarding Plaintiff's pain and as noted in the Government's briefing, the Court's review of Plaintiff's medical records reflect that beginning in April 2018, Plaintiff informed Dr. Rose that he was not taking any medication for his allegedly disabling pain [TR 359]. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (not taking medication for pain is a fact that may discredit a claimant's claim as to the severity of his pain). And while admittedly Plaintiff complained to Dr. Rose of pain, Dr. Rose's examination showed

Plaintiff's hips and lower extremities had normal muscle tone and no tenderness, swelling, deformities, instability, subluxations, weakness, or atrophy [TR 361-362]. Moreover, Dr. Rose noted that "range of motion in all planes was full and painless" [TR 361]. Dr. Ted Truly's records similarly discount Plaintiff's severe subjective complaints of pain. On September 16, 2016, October 27, 2016, January 5, 2017, January 23, 2017, November 16, 2017, May 10, 2018, January 10, 2019, May 9, 2019, August 13, 2019, and on February 12, 2020, Dr. Truly noted that Plaintiff did not appear in acute distress [TR 373-374, 376-377, 381-382, 387-388, 390, 397, 400, 402, 404]. After reviewing all of Plaintiff's medical records, the SAMCs each found that the objective medical records did not support Plaintiff's statements regarding his symptoms [TR 65, 75]. *Ernest. A. J. v. Saul*, No. 1:18-cv-194, 2020 WL 6877706, at *16 (N.D. Tex. Oct. 19, 2020), (finding the RFC determination was supported by substantial evidence where the SAMCs found that the medical evidence "does not wholly support the alleged severity and limiting effects alleged by Plaintiff"), *report and recommendation adopted*, No. 1:18-cv-194, 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020).

An ALJ is in the best position to assess a claimant's subjective symptoms, and the Fifth Circuit affords the ALJ great deference when evaluating a claimant's subjective symptoms. *See Kiefer v. Comm'r of Soc. Sec.,* No. 4:13-CV-330, 2014 WL 2700000, at *4 (E.D. Tex. June 13, 2014) (Mazzant). Here, the totality of Plaintiff's objective medical record reflect that the ALJ's analysis of Plaintiff's symptoms was clearly tailored to the evidence of record, properly evaluated Plaintiff's alleged symptoms, and accepted the symptom reports to the degree to which they were consistent with the objective medical evidence and other evidence of record. *See Jackson v. Comm'r*, No. 4:20-cv-01149, 2021 WL 5042479, at *4 (N.D. Tex. Sept. 20, 2021), *report and recommendation adopted*, No. 4:20-cv-01149, 2021 WL 5040229 (N.D. Tex. Oct. 29, 2021); *see*

also *Jones v. Saul*, No. 3:19-cv-0880, 2020 WL 5752390, at *17 (N.D. Tex. Aug. 24, 2020*), report and recommendation adopted*, No. 3;19-cv-0880, 2020 WL 5747873 (N.D. Tex. Sept. 25, 2020).

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended the decision of the Commissioner be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 15th day of November, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE